UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMAN TAHMOORESI and<br>PARISA SAFAEI<br><br>    Plaintiffs,<br><br>v.<br><br>ANTONY BLINKEN<br>*in his official capacity as Secretary of State,*<br>*United States Department of State.*<br><br>    Defendant. | Case No. 21-CV-11383-AK |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**A. KELLEY, D.J.**

In this action, Plaintiffs Saman Tahmooresi and Parisa Safaei ("Plaintiffs") seek relief in connection with the United States Department of State's ("the State Department") interpretation of immigration and anti-terrorism statutes to categorically exclude all men who have served in the Iranian armed forces since the Revolution of 1979 from admission to the United States. The defendant, Secretary of State Antony Blinken ("Defendant"), has moved to dismiss. Because the Court cannot award relief to Plaintiffs on either of the claims they assert, that motion is **GRANTED**.

I. **FACTUAL & PROCEDURAL BACKGROUND**

On a motion to dismiss, the Court adopts and accepts as true the facts pleaded in Plaintiffs' complaint. [Dkt. 16].

1

Plaintiff Saman Tahmooresi ("Mr. Tahmooresi") is a citizen of Iran who resides in Ecuador.  In 2004, when Mr. Tahmooresi turned 18, he entered a lottery for conscription into military service as required by Iranian law.  Mr. Tahmooresi was assigned to serve as a physical education trainer and mountaineering trainer with the Islamic Revolutionary Guard Corps ("IRGC").  He served within Iran for two years, teaching physical education classes and leading mountaineering trips, and separated from the IRGC in 2006.

Mr. Tahmooresi later married Plaintiff Parisa Safaei ("Dr. Safaei"), a United States citizen who resides in Massachusetts. In February 2018, Dr. Safaei filed a Form I-130 Petition for Alien Relative on behalf of Mr. Tahmooresi.  The United States Citizenship and Immigration Services ("USCIS") approved this petition in September 2018, and notified the State Department to schedule an immigrant visa interview for Plaintiffs.  Between September 2018 and November 2021, the State Department requested copies of Mr. Tahmooresi's military records on five occasions, and Mr. Tahmooresi complied each time.

On December 1, 2020, Mr. Tahmooresi interviewed with a consular officer at the United States Consulate in Guayaquil, Ecuador.  At this interview, the consular officer asked Mr. Tahmooresi about his military duties, and whether he had ever engaged in, knew of, or supported any terrorist activity.  Mr. Tahmooresi responded "no" to each question about terrorist activity.

On October 28, 2021, the State Department denied Mr. Tahmooresi's application, finding that he was ineligible for admission to the United States based on his association with a terrorist organization pursuant to 8 U.S.C. § 1182(a)(3)(B)(i), commonly referred to as the Terrorism Related Inadmissibility Grounds ("TRIG").  The State Department had designated the IRGC as a terrorist organization in April 2019, after USCIS approved Mr. Tahmooresi's I-130 petition, but before the consular officer acted on the petition.  Since applying this designation, the State

Department has denied visa applications from all Iranian males who had been conscripted into service in the IRGC at any time since 1979, the year of Iran's Revolution.

Prior to the State Department's denial of Mr. Tahmooresi's application in October 2021, Plaintiffs had opened a mandamus action in federal court, seeking to compel the consular office to make a decision. [Dkt. 1]. Upon receiving that decision, Plaintiffs withdrew their mandamus request, and substituted the instant complaint in December 2021. [Dkt. 16]. This complaint seeks a declaratory judgment and an injunction against the State Department concerning its enforcement of TRIG and compelling it to reconsider Mr. Tahmooresi's application. Defendants timely moved to dismiss the complaint for lack of subject-matter jurisdiction, or, in the alternative, for failure to state a claim. [Dkt. 17].

## II. DISCUSSION

### A. Claim 1: Violation of the Administrative Procedure Act

Plaintiffs' first claim alleges that the State Department violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, by applying TRIG in an arbitrary and capricious manner; specifically, by applying that statute to blanketly exclude all Iranian men who have served in the IRGC since 1979, regardless of the character of their service. Defendant has moved to dismiss this claim on multiple grounds, but because the Court lacks subject-matter jurisdiction, it addresses only that argument.

#### i. Subject-Matter Jurisdiction

The party asserting federal subject-matter jurisdiction is responsible for establishing that such jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).  "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Productions, Inc., 638 F.3d 1, 3 (1st Cir. 2011); see also CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (describing federal courts' "responsibility to police the border of federal jurisdiction" (citation omitted)).

### ii. Doctrine of Consular Nonreviewability

Defendant argues that the doctrine of consular nonreviewability prohibits the Court from exercising subject-matter jurisdiction over Claim 1.  This doctrine places non-constitutional issues in immigration disputes "outside the jurisdiction of the courts." Chiang v. Skeirik, 582 F.3d 238, 242 & n.6 (1st Cir. 2009); see Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("[A] consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise.").  As the Supreme Court articulated, "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950).  Rather, the law commits the decision to admit or exclude an alien to the discretion of the executive branch, and courts may not disrupt this decision so long as the executive has exercised its power "on the basis of a facially legitimate or bona fide reason." Kleindienst v. Mandel, 408 U.S. 753, 770 (1972); see Liberty Church of the

Assemblies of God v. Pompeo, 470 F. Supp. 3d 74, 80 (D. Mass. 2020) (reasoning that "courts cannot look behind the facially legitimate and bona fide reasons offered by consular officers").

The doctrine of consular reviewability is rooted in the broader principle that the political branches of government—the legislature and executive—have near-complete power to regulate immigration. See Trump v. Hawai'i, 138 S. Ct. 2392, 2407 (2018) ("The exclusion of aliens is a fundamental act of sovereignty by the political branches."); Saavedra Bruno, 197 F.3d at 1158–59 (detailing "the ancient principle of international law that a nation state has the inherent right to exclude or admit foreigners and to prescribe applicable terms and condition"). The Supreme Court and the courts of appeals "have repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." East Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 755 (9th Cir. 2018) (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)) (internal quotation marks omitted). And where Congress has the exclusive power to *regulate* immigration, "it shares its related power to admit or exclude aliens with the Executive." Id. at 756 (citing Knauff, 338 U.S. at 542). Thus, courts "review the immigration decisions of the political branches *only with the greatest caution* … to determine whether they exceed the constitutional or statutory scope of their authority." Id. (emphasis added).

Accordingly, this district has repeatedly invoked the doctrine of consular nonreviewability to decline to exercise jurisdiction over cases in which it is asked to review a consular officer's denial of an immigration petition. See, e.g., Liberty Church, 470 F. Supp. 3d at 80 (granting motion to dismiss where "the consular officer provided a facially legitimate and bona fide reason for exclusion"); Samandar v. Blinken, No. 20-cv-12068, 2022 WL 1202869 at *2 (D. Mass. Apr. 22, 2022) (applying doctrine to decline to exercise jurisdiction in case where

applicant was denied admission based on service in Iranian military); Pishdadiyan v. Clinton, No. 11-cv-10723, 2012 WL 601907 at *15 (D. Mass. Feb. 7, 2012) (declining "to look past the exercise of the discretion afforded consular officers" where the government had stated "a facially legitimate and bona fide reason"); ZigZag, LLC v. Kerry, No. 14-cv-1411, 2015 WL 1061503 at *6 (D. Mass. Mar. 10, 2015) (same).

### iii. Application

In their briefing on the instant motion, the parties agree that the Court would not have jurisdiction to review a direct challenge to the consular officer's denial of Mr. Tahmooresi's petition. Mr. Tahmooresi instead asserts that the APA creates jurisdiction for the Court to review the State Department's broader policy of applying TRIG to categorically exclude persons in his position from the United States. However, this district has held twice in the past two years that the doctrine of consular nonreviewability precludes judicial review under the APA, most recently on facts nearly identical to those presented here. Samandar, 2022 WL 1202869 at *1; Liberty Church, 470 F. Supp. at 77 n.3. In Samandar, the plaintiff was the mother of a former member of the IRGC. 2022 WL 1202869 at *1. She sought both direct and APA review of a consular officer's application of TRIG to deny her son's visa application on the basis of his IRGC service. Id. After applying the doctrine of consular nonreviewability to dismiss the direct review claim, the court found that the doctrine also precludes review under the APA. Id.; see also Liberty Church, 470 F. Supp. at 77 n.3 ("[C]onsular nonreviewability stands as an exception to judicial review under [the APA].").

Both Samandar and Liberty Church adopted the holding of the D.C. Circuit in Saavedra Bruno, which interpreted Section 702 of the APA—the provision creating the cause of action Mr.

Tahmooresi asserts here.  See 5 U.S.C. § 702.  That section creates a right to "judicial review" for any person "suffering legal wrong because of agency action," but expressly does not "affect[] other limitations on judicial review."  Id.  Saavedra Bruno—and, by extension, Samandar and Liberty Church—interpreted the statute's reference to "limitations on judicial review" to encompass the doctrine of consular nonreviewability.  197 F.3d at 1160.  The D.C. Circuit relied upon the Administrative Conference report on the statute, which found that this was an area "in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination."  Id.

Although the First Circuit has not addressed this section of the APA expressly, this Court sees no reason to deviate from the reasoning of Samandar and Liberty Church, and likewise holds that it lacks jurisdiction to review Mr. Tahmooresi's APA claim.

### B.  Claim 2: Fifth Amendment Challenge

The Plaintiffs' second claim alleges that the State Department violated Dr. Safaei's Fifth Amendment due process rights—specifically, her right to reside with her husband in the United States—through its application of TRIG to exclude Mr. Tahmooresi and all similarly situated Iranian men.  Defendant raises jurisdictional arguments on this claim that present novel questions of law in this circuit.  However, the Court need not engage with those arguments, because even if there were subject-matter jurisdiction, Plaintiffs have not stated a claim on which relief can be granted.

To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiffs

7

have asserted a Fifth Amendment claim, which requires them to both identify a substantive due process right that the government has violated, and to show that the challenged action was so egregious that it "shocked the conscience." Aguilar v. USCIS, 510 F.3d 1, 21–22 (1st Cir. 2007). On these facts, this claim is not actionable as a matter of law, as Plaintiffs cannot make either of the requisite showings.

First, no court has held that a substantive due process right is violated where a married couple is separated by a consular officer's decision to exclude one spouse from the United States. Although there is a fundamental constitutional right to marry, see Obergefell v. Hodges, 576 U.S. 644 (2015), courts have repeatedly held that "these rights are not violated when a spouse is removed or denied entry into the United States." Carter v. Dep't of Homeland Security, No. 1:21-cv-422-RCL, 2021 WL 6062655 (D.D.C. Dec. 22, 2021) (collecting cases); see also Swartz v. Rogers, 254 F.2d 338, 339 (D.C. Cir. 1958) ("[T]he wife has no constitutional right which is violated by the deportation of her husband.").

Further, even if there were a recognized constitutional cause of action, Plaintiffs have not pled facts that plausibly suggest the State Department's action was so egregious that it "shocked the conscience," Aguilar, 501 F.3d at 21. There is certainly room for reasonable minds to disagree over the State Department's wisdom in choosing to categorically exclude all men who have served in the IRGC since 1979 instead of evaluating their petitions on a case-by-case basis. However, our constitutional system places the authority to make such decisions squarely within the hands of the political branches of government. See East Bay Sanctuary Covenant, 932 F.3d at 755–56. The Court cannot conclude that the State Department's decision to enforce Congress's immigration and anti-terrorism laws "shocks the conscience"; conversely, it must defer to those branches' decisions.

### III. CONCLUSION

Because the Court is without jurisdiction to review Claim 1, and Plaintiffs have not stated a claim upon which relief can be granted on Claim 2, Defendant's motion to dismiss is **GRANTED** and this action is **DISMISSSED** with prejudice.

  **SO ORDERED.**

September 21, 2022                  /s/ Angel Kelley
                                ANGEL KELLEY
                                U.S. DISTRICT JUDGE